IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| LINDA VALERINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ERIC HOLDER, in his official | : | |
| capacity as United States | : | |
| Attorney General | : | NO. 08-035 |

MEMORANDUM

Bartle, J.                                                    August 20, 2014

         Plaintiff Linda Valerino ("Valerino"), a Deputy U.S.
Marshal ("DUSM"), has filed this action asserting claims of unlawful
employment practice under Title VII of the Civil Rights Act of 1964,
42 U.S.C. §§ 2000e et seq., against defendant Eric Holder in his
official capacity as United States Attorney General.  Her Third
Amended Complaint involves allegations of gender discrimination,
retaliation, and the creation of a hostile work environment by
Valerino's supervisors in the United States Marshals Service
("USMS") in the District of the Virgin Islands from September 20,
2005 to the present day.  Valerino also avers gender discrimination
and retaliation stemming from three failures to promote her, one in
May 2008, and two in August 2008.

         Now before the court is the motion of the Government for
summary judgment under Rule 56 of the Federal Rules of Civil
Procedure.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rule 56(c) states:

> A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion
> by ... citing to particular parts of materials
> in the record, including depositions,
> documents, electronically stored information,
> affidavits or declarations, stipulations ...,
> admissions, interrogatory answers, or other
> materials; or ... showing that the materials
> cited do not establish the absence or presence
> of a genuine dispute, or that an adverse party
> cannot produce admissible evidence to support
> the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

-2-

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

                              II.

The following facts are undisputed or viewed in the light most favorable to Valerino as the nonmovant.  Valerino has been employed by USMS for approximately 25 years and was assigned during the relevant time period to St. Croix in the U.S. Virgin Islands.  On September 20, 2005, nearly three years before the initiation of the present lawsuit, Valerino filed a multi-count employment discrimination complaint in this court against USMS and several other defendants.  See Valerino v. United States, Civil Action No. 05-0139, 2008 WL 2076662 (D.V.I. May 15, 2008) (hereinafter "Valerino I").  On January 17, 2008, the Valerino I jury found that USMS had "(1) discriminated against [Valerino] by failing to promote her to the position of Supervisory Deputy United States Marshal; (2) subjected [Valerino] to a hostile or abusive work environment; and (3) retaliated against [Valerino] for filing a complaint of

                              -3-

discrimination with the Equal Employment Opportunity Commission."
Id. at *1.  The jury awarded her $500,000 in damages, which was
reduced to the statutory limit of $300,000 plus $92,314 in back pay.
42 U.S.C. § 1981a(b)(3)(D).  A judgment was entered accordingly.

From September 20, 2005 to the present day, which includes
the period that the Valerino I litigation was pending, Valerino
claims to have suffered from certain ongoing unlawful employment
practices.  She submitted at least two EEO complaints as Valerino I
went forward, one in 2006 and one in 2007.  Indeed, after the jury
verdict in Valerino I, USMS did not take any formal steps to
discipline the responsible individuals or otherwise address the
situation.  This action was initiated approximately four months
after the verdict in Valerino I.

Valerino broadly contests three categories of USMS's
actions in the 10-count Third Amended Complaint.[1]  First, she asserts
that she has suffered from disparate treatment because male DUSMs in
the St. Croix office of the District of the Virgin Islands were
treated more favorably than female DUSMs.  According to Valerino,
male DUSMs were promptly approved for leave, promptly paid
reimbursements, allowed to conduct themselves improperly, promptly
given firearms qualification training, included in mission briefings

---

[1]  Valerino originally brought a common-law tort action against
several individual defendants in Count IV of the Third Amended
Complaint.  This count was dismissed in an Order dated
February 13, 2009.

and planning sessions, and placed in supervisory positions, while female DUSMs were not.

Second, Valerino points to conduct from the same time period -- much of it overlapping with the conduct argued to be disparate treatment -- as evidence of USMS's retaliation for her seeking redress of her civil rights.  Additionally, this conduct has purportedly created a hostile work environment.  For example, she has faced undue delay of her leave slips, delay of reimbursements, refusal to qualify her to use her firearm, exclusion from mission briefings, denial of the chance to improve her eligibility for promotion by serving as Deputy in Charge, and the overburdening of the understaffed St. Croix office of USMS.

Finally, Valerino was denied promotion to several open positions in May and August 2008, which denials she urges constitute unlawful discrimination and retaliation.  When a position opens within the USMS system, it is ordinarily published in a Merit Promotion Announcement ("MPA").  A senior officer from the office that has a vacancy will evaluate qualified candidates responding to the MPA and rank them.  This ranking is then submitted to the USMS Career Board, which is made up of senior USMS employees.  The Career Board then makes a final recommendation to the selecting officer, who is either the USMS Director or another official with delegated selection authority, normally the officer who supervises the position being filled.

-5-

In May 2008, a Supervisory Deputy U.S. Marshal ("SDUSM") position was listed in MPA 08-091 for the USMS office in Tucson, Arizona.  The official making the selection recommendation was Chief SDUSM Fidencio Rivera.  There were five qualified applicants: William Berry ("Berry"), Michael Lavin ("Lavin"), Dianna McChargue ("McChargue"), Lonnie Nance ("Nance"), and Valerino.

Rivera ranked Lavin first, McChargue second, and Valerino last after Berry and Nance.  Rivera explained at the time that the District of Arizona had "done a great deal of outreach to ascertain the historical performance, professionalism and commitment to high standards of these candidates."  He noted that "DUSM Lavin is held in high regard by district mngt [management] in [his current duty post]."  It is Valerino's contention that Rivera's policy of contacting a candidate's previous supervisors in this fashion doomed her chances of obtaining the promotion, since her superiors in the Virgin Islands were tainted by discriminatory and retaliatory animus left over from her previous EEO complaints and subsequent lawsuit.

There is no evidence of any conversations Rivera may have had with individuals in the Virgin Islands.  Rivera admitted that he had heard of Valerino's previous EEO activity, though whether he had at the time of the decisions relevant here is unclear.  Valerino points to Rivera's history of defending EEO complaints as evidence of his discriminatory and retaliatory motivations.

The Career Board ultimately agreed with Rivera's recommendation, and Lavin received the position. Later at Rivera's deposition, rather than referencing Lavin's reputation among his previous supervisors, Rivera cited the candidate's service in the Southern District of New York, which is a large district, his work on a major terrorism trial in that district, and his top-secret clearance as reasons for his selection for the SDUSM position in Tucson.

In August 2008, several months after MPA 08-091 was filled, another SDUSM vacancy was listed for the Tucson office in MPA 08-182. Chief SDUSM Rivera was, again, the recommending official. Valerino and McChargue were the only two qualified applicants for this position. Rivera ranked McChargue first and Valerino second, although he simultaneously requested that the MPA be withdrawn and relisted in the hopes of obtaining more applicants. That request was denied, and the Career Board recommended McChargue for the position. She was selected.

A third announcement, MPA 08-193, was also listed in August 2008. The listing was for three vacancies in the USMS Office of Inspections located in Alexandria, Virginia. There were five candidates that were ranked for the position, including Valerino. Four of the candidates were female, and one, Paul Duffy ("Duffy"), was male. The recommending official for the position was Stanley Griscavage ("Griscavage"). At first, Griscavage ranked Duffy as the

-7-

only qualified candidate.  Four days later, Griscavage ranked all five candidates with Duffy first and Valerino last, but in his worksheet, he recommended to the Career Board that only one of the three vacancies be filled and the other two slots be canceled and relisted.[2]  The Career Board seconded these recommendations, and Duffy was selected for the one position not canceled.  A USMS official later explained that the remaining slots were withdrawn because it was thought that the female candidates were insufficiently experienced to perform well in the Office of Inspections.  At the time, Duffy had twelve years' USMS experience, while Valerino had over twenty.

In support of her retaliation claim Valerino maintains that Griscavage had knowledge of her previous EEO activity at the time he made his decisions regarding MPA 08-193.  As part of his duties, Griscavage oversaw complaints from citizens about USMS officers.  Either he or an intake coordinator would review the complaints as they were received and take appropriate action. Griscavage did not have any intake coordinators working under him in 2007.  Whether he had any later is not clear, but he testified that he would sometimes review citizen complaints on his own regardless of whether an intake coordinator was working there.

---

[2]  One of the other female candidates was selected for another MPA, and a second of the female candidates was disqualified as a result of an active internal affairs investigation.  No party has explained why Griscavage submitted a second ranking after first listing Duffy as the only qualified candidate.

In January 2008, a citizen submitted a complaint against Valerino to the Office of Inspections, including a news article from St. Croix detailing the jury verdict in Valerino I.  The complaint was ultimately closed as unfounded.  There is no evidence that Griscavage, as opposed to an intake coordinator, personally reviewed or even saw this submission.  It was eight months after the article was sent that he recommended the positions listed in MPA-193 be canceled rather than recommending Valerino for the Office of Inspections.

III.

Section 2000e-2 of the Civil Rights Act of 1964 prohibits discrimination according to sex in the performance of several actions in the workplace:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex, or ...; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex.

42 U.S.C. § 2000e-2(a).  Similarly, § 2000e-3 forbids retaliation against an individual who takes steps to protect his or her rights under this statute:

-9-

> It shall be an unlawful employment practice for
> an employer to discriminate against any of his
> employees or applicants for employment...
> because [the employee] has opposed any practice
> made an unlawful employment practice by this
> subchapter, or because he has made a charge,
> testified, assisted, or participated in any
> manner in an investigation, proceeding, or
> hearing under this subchapter.

Id. § 2000e-3(a).

To begin our analysis of Valerino's claims of sex discrimination and retaliation, we set forth the burden-shifting framework provided in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802 (1973). McDonnell Douglas supplies the standard for both types of statutory claim. See id.; Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006); Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006). The plaintiff bears the initial burden of moving forward by making out a prima facie case, after which the defendant must assert a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. If the defendant succeeds in doing so, the plaintiff has the next move. In order to survive summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

-10-

IV.

In light of this burden-shifting framework, we first address Valerino's claims for gender discrimination with respect to her attempts to win promotions in each of MPA 08-091, MPA 08-182, and MPA 08-193, which are Counts V, VII, and IX of the Third Amended Complaint respectively. To establish a <u>prima facie</u> case of gender discrimination for failure to promote, a plaintiff must come forward with evidence that:

> (1) [T]he plaintiff belongs to a protected class;
> (2) he/she was qualified for the position;
> (3) he/she was subject to an adverse employment action despite being qualified; and
> (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.

<u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003). "[A] plaintiff's burden at the prima facie stage is not intended to be 'onerous.'" <u>Anderson v. Wachovia Mortgage Corp.</u>, 621 F.3d 261, 272 (3d Cir. 2010) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-54 (1981)).

In this case the first three prongs of the prima facie case are not contested. As a female, Valerino is a member of a protected class under Title VII. She was qualified for each of the vacancies described, and she was not selected despite being qualified. The Government only contends that there are no

circumstances here sufficient to raise an inference of discriminatory action.  We discuss each MPA in chronological order.

To support the requirement of the fourth prong of the prima facie case, Valerino points to Lavin's promotion as evidence of discrimination with regard to MPA 08-091 in Count V of the Third Amended Complaint.  A plaintiff may meet the fourth prong by coming forward with evidence that similarly situated individuals outside of the protected class were treated differently.  See Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939-40 (3d Cir. 1997).  Because Valerino was not promoted and Lavin, a male falling outside the protected class, was promoted, she has satisfied her burden of establishing a prima facie case of discrimination for MPA 08-091.

The Government must therefore articulate a legitimate, non-discriminatory reason for promoting Lavin over Valerino.  To do so it cites Lavin's "considerable favorable experience," including his work in a large district, his work on a major terrorism trial during his time in New York, and his top secret security clearance. These were to a large extent the reasons given by the Career Board. Originally, Chief SDUSM Rivera in Tucson relied on Lavin's august reputation among his superiors and the initiative the candidate took in taking cost-saving measures as well.  The Government has provided legitimate, non-discriminatory reasons for selecting Lavin.

-12-

As a result, the burden shifts back to Valerino to point to "some evidence" from which a factfinder might disbelieve the Government's stated reasons or believe that discrimination is more likely than not a motivating or determinative cause of the employer's action.   Fuentes, 32 F.3d at 764.   To satisfy this burden, Valerino argues first that Lavin was not more qualified than she when the actual demands of the position are taken into account. In his deposition, Chief SDUSM Rivera revealed that, among other things, the Tucson office rarely handled confidential material that would make a top secret clearance desirable and that Valerino had other qualifications such as Spanish language ability and experience as a warrant coordinator that are more clearly relevant to the Tucson office's work than Lavin's work on, say, terrorism trials.

These facts notwithstanding, our Court of Appeals has "cautioned courts on several occasions to avoid unnecessary intrusion into subjective promotion decisions." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992). While such decisions are "not insulated from judicial review for unlawful discrimination," it is not the court's place to perform a complex, subjective weighing between job applicants beyond a search for evidence that might undermine an employer's proffered reasons or otherwise support an inference of discrimination. See id. at 527-29.   Although Valerino has pointed to several qualifications that she holds that Lavin did not, these differences do not lessen

-13-

Lavin's qualifications and do not support a reasonable inference of discrimination.

Valerino also maintains that USMS's proffered reasons for hiring Lavin are pretextual because they changed over time. Shifting or inconsistent rationales might sometimes demonstrate pretext for discrimination. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 284 (3d Cir. 2001). It is important, however, to consider such evidence "in light of the entire record." Id. Ultimately, the changes in rationale must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" for a reasonable factfinder to disbelieve the reasons given for the adverse employment action in question. Fuentes, 32 F.3d at 765.

In this case, there are no such vacillations sufficient to cast doubt on the Government's articulated reasons. In his recommendation to the Career Board, Chief SDUSM Rivera primarily relied upon Lavin's reputation among his superiors in the Eastern District of North Carolina where he was stationed at the time MPA 08-091 was announced. When the Career Board seconded this recommendation, it cited Lavin's experience in a large district, the terrorism trial he conducted in New York, numerous cost-saving programs that he instituted, and other qualifications. In his deposition, Rivera focused on these reasons rather than Lavin's reputation, adding that the candidate also had a top secret security clearance. Although Rivera did not list every one of Lavin's

-14-

favorable qualifications at the outset, none of the qualifications later relied upon serves to contradict the others, nor do they inject weakness, implausibility, or other flaws into USMS's stated reasons for selecting Lavin over the other four candidates. Valerino has thus failed to rebut USMS's stated reasons for promoting Lavin.  Summary judgment will be granted in favor of the Government on Count V, Valerino's claim for disparate treatment in failing to promote her for MPA 08-091.

MPA 08-182, the second opening for a SDUSM in Tucson and which forms the basis of Valerino's discrimination claim brought in Count VII, can be dealt with more swiftly because Valerino does not satisfy her <u>prima facie</u> burden of coming forward with evidence of any "circumstances that raise an inference of discriminatory action." <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003).  Chief SDUSM Rivera originally recommended that MPA 08-182 be canceled because only two candidates, both female, applied, but USMS did not follow through on his advice.  The Career Board instead recommended McChargue for the position.  When an employer takes two qualified female candidates and selects one for the open position, without more there is no basis on which to make any inference of gender discrimination.  Even if we were to conclude that Valerino has made out a <u>prima facie</u> case, she makes no attempt to rebut USMS's reliance on McChargue's numerous qualifications in deciding

-15-

to promote her over the plaintiff.  Summary judgment in favor of the Government will be granted on Count VII.

This leaves Count IX, which is a claim for discrimination arising from USMS's failure to promote Valerino to a position listed in MPA 08-193.  MPA 08-193 was a listing for three vacancies in the Office of Inspections, for which four females and one male, Paul Duffy, applied.  One of the female candidates was promoted elsewhere, and a second was disqualified as a result of an active investigation against her.  There were therefore three remaining qualified candidates available for three open positions.

At the recommendation of Stanley Griscavage, Duffy was promoted to one slot, and the other two slots were canceled and relisted a short time later.  Promoting a male and relisting two otherwise vacant positions rather than promoting qualified female candidates is some evidence that "under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position."  Sarullo, 352 F.3d at 797.  Valerino has made out a prima facie case of discrimination for MPA 08-193.

The Government explains that Griscavage was originally interested in either Duffy or Kerry Bertrand, one of the female applicants, but that Griscavage recommended Duffy after he learned that Bertrand would likely be promoted pursuant to a different MPA. The Government further notes that Duffy was more desirable than

-16-

Valerino because he was "reassignment eligible," that is, he was already at the pay grade for the open position.

Valerino must therefore rebut these legitimate, non-discriminatory reasons. We conclude that she has. As Valerino notes, the rationales put forward by the Government totally ignore USMS's decision to cancel two of the three vacancies in MPA 08-193 rather than promote Valerino. A USMS official explained that the vacancies were canceled due to concerns that the remaining applicants had insufficient experience to be qualified, but no further explanation has been given. We note that Duffy has nearly a decade less USMS service than Valerino. These serious gaps in USMS's reasons for failing to promote otherwise qualified female candidates to the Office of Inspections are enough for Valerino to survive summary judgment. The motion of the Government for summary judgment will be denied as to Valerino's claim under Count IX of the Third Amended Complaint for discrimination arising out of MPA 08-193.

V.

We move on to Counts VI, VIII, and X, which make out Valerino's assertion that USMS's failure to promote her to the positions discussed above was a result of unlawful retaliation. In a case based on retaliation under 42 U.S.C. § 2000e-3, the plaintiff's prima facie burden is somewhat different than it is for a claim of discrimination under § 2000e-2. To establish a prima

facie case of retaliation, a plaintiff must come forward with

evidence that:

> (1) [S]he engaged in protected activity,
> (2) the employer took a materially adverse
> action against her, and
> (3) there was a causal connection between the
> protected activity and the employer's action.

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231 (3d

Cir. 2007).  The first element of a prima facie retaliation case is

satisfied by a showing of "complaints to [the employer], whether

oral or written, formal or informal" as long as they contest

employment practices that a reasonable person would conclude are

prohibited by Title VII.  Abramson v. William Patterson Coll. of

N.J., 260 F.3d 265, 288 (3d Cir. 2001); LeBoon, 503 F.3d at 232 n.9.

As to the second element, "adverse action" in the

retaliation context encompasses a larger class of circumstances than

the narrower "adverse employment action" concept in a substantive

discrimination case.  Thompson v. N. Am. Stainless, L.P., 131 S. Ct.

863, 867–68 (2011).  In addition to actions that "affect the terms

and conditions of employment," Title VII's anti-retaliation

provision more broadly proscribes "any employer action that 'well

might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'"  Id. at 868 (quoting Burlington N. &

Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  However,

adverse actions are only those actions "that produce[] an injury or

harm." Burlington, 548 U.S. at 67.   They are not "petty slights, minor annoyances, [or] simple lack of good manners." Id. at 68.

Finally, there must be evidence of a causal link.   This element ultimately requires proof "according to traditional principles of but-for causation." Univ. of Tex. S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).   When there is no direct evidence of a causal connection between protected activity and adverse action, the causation prong can be met in two main ways. First, "[w]here the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quotation marks omitted). Second, even where no such proximity exists, we are instructed to determine "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" LeBoon, 503 F.3d at 232 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).   This can include an "intervening pattern of antagonism" that is "so strong that it [overcomes] the lack of temporal proximity." Farrell, 206 F.3d at 281 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)).   We are cautioned to consider "a broad array of evidence" on the causation prong. Id. at 284.

-19-

With these principles explained, we now analyze Valerino's retaliation claims as they pertain to USMS's failure to promote her. It is undisputed that Valerino engaged in protected activity in the form of the Valerino I litigation and the number of subsequent EEO complaints of gender-related discrimination and retaliation that she lodged. Nor is there is any question that a failure to promote is an "adverse action" as understood in the Title VII retaliation context. See Carter v. Midway Slots & Simulcast, 511 F. App'x 125, 129 (3d Cir. 2013). It is the Government's contention that Valerino fails to come forward with evidence of causation.

We begin with Count VI concerning MPA 08-091 for which Chief SDUSM Rivera ultimately selected Michael Lavin. Valerino brought forward evidence that Chief SDUSM Rivera learned of Valerino's protected activity at some point. Asked when he came into that knowledge, Rivera responded that "it was about that time" when Valerino had applied to positions in the District of Arizona. He also explained in recommending Lavin to the Career Board that "[t]he D/AZ [District of Arizona] has done a great deal of outreach to ascertain the historical performance, professionalism and commitment to high standards of" the applicants for the position. From this it can be inferred that Rivera spoke with Valerino's superiors in the Virgin Islands about their opinions of her just weeks after Valerino obtained a jury verdict against them. Paired with Rivera's admission of negative feelings towards some

-20-

individuals who have filed EEO complaints against him in the past, this is sufficient evidence taken in the light most favorable to Valerino to meet her prima facie burden of showing retaliation as to Rivera's decision to promote Lavin over her for MPA 08-091.

The burden shifts to the Government to provide a legitimate, non-discriminatory reason for Rivera's actions. As explained above, the Government highlights Lavin's qualifications for the position that Rivera and the Career Board thought to be favorable. This shifts the burden back to Valerino to inject doubt into the Government's reasons or otherwise come forward with sufficient evidence from which a reasonable factfinder could conclude that an invidious discriminatory motive was more likely than not the cause of USMS's actions. Fuentes, 32 F.3d at 764.

As before, Valerino points to Rivera's changing rationales for recommending Lavin to meet her burden of proving pretext. This was not enough in the discrimination context to rebut the Government's articulated reasons, and the same is true here. Rivera's reliance on the candidates' reputations in previous duty stations is absent from his later explanation for recommending Lavin, but this simple omission does not give grounds for a reasonable factfinder to disbelieve that Lavin's significant qualifications were a pretext for retaliation. We must also take into account that in making its own recommendation the Career Board contemporaneously referenced most of the reasons later mentioned by

-21-

Rivera.  The Government's summary judgment motion will be granted on Count VI, Valerino's claim of retaliation in failing to promote her for MPA 08-091.

A similar analysis holds for MPA 08-182, which is Count VIII of the Third Amended Complaint.  Here, even assuming that Valerino has made out a prima facie case of retaliation, the Government has put forward McChargue's extensive qualifications that led USMS to select her over Valerino.  Valerino makes no effort to rebut these legitimate, non-discriminatory reasons for failing to promote her.  Summary judgment will be granted as to Valerino's retaliation claim on MPA 08-182.

Lastly, as to Count X involving MPA 08-193 and the Office of Inspections, Valerino argues that Griscavage, the recommending official for this opening, learned of Valerino's previous EEO activity in reviewing a citizen complaint against her that mentioned the Valerino I jury verdict.  In January 2008, roughly eight months before the promotion decisions at issue in this case, the Office of Inspections received a newspaper article about the Valerino I jury verdict from a citizen who filed a complaint against Valerino.  As mentioned above, it is not clear from the record whether Griscavage or an intake coordinator working under him reviewed this information.  The receipt of the newspaper article and Griscavage's possible review of it is the only admissible evidence that he was aware of Valerino's protected activity during the relevant time

-22-

period.[3]  According to Valerino, this knowledge caused him to cancel
and relist the open positions rather than promote her.

It is a necessary prerequisite of a retaliation claim that
the actor making the decision in question must have had knowledge of
the plaintiff's protected activity at the time of the decision.  See
Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).  In
order to determine that Griscavage had knowledge of the Valerino I
verdict, a factfinder would have to infer that Griscavage had seen
the newspaper article submitted in January 2008 even though there
may have been intake coordinators reviewing citizen submissions in
his stead.  Second, if Griscavage did have knowledge of Valerino's
protected activity, a factfinder would still need to conclude
further that it was a but-for cause of Griscavage's decision in
August 2008 over half a year later.  See Univ. of Tex. S.W. Med.
Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Any finding of retaliation would be speculative.  The
record simply cannot support a causal link between Valerino's
protected activity and the failure to promote her to the vacancy
listed in MPA 08-193.  See Robertson v. Allied Signal, Inc., 914
F.2d 360, 382 n.12 (3d Cir. 1990).  We also note that while there is
no precise length of time between protected activity and adverse

---

[3]  Valerino also argues that Griscavage knew of her protected
activity because he is friends with another USMS official who
had knowledge of the plaintiff's previous workplace complaints.
We find any such evidence to be hearsay and will not consider
it.

action that is automatically "unusually suggestive" of retaliation, our Court of Appeals has held that adverse action following "several months" after the filing of EEO charges does not support an inference of causation.  See, e.g., Tahiliani v. Bayer Corp., 170 F. App'x 215, 217 (3d Cir. 2006).  Valerino has not met her prima facie burden, and summary judgment will be granted in favor of the Government on Count X, Valerino's claim of retaliation in failing to promote her to any of the vacancies listed in MPA 08-193.

VI.

We turn next to Count I, Valerino's claim of gender discrimination arising from the time of her employment in the District of the Virgin Islands.  The plaintiff's claim spans a number of years and contains myriad discrete instances of misconduct.  The Government does not fully address all of these incidents in its brief, and neither does Valerino.  We focus on those numerous factual circumstances to which the Government gives substantive attention in its briefing.

For a plaintiff to meet her prima facie burden in a discrimination case not involving a failure to promote, she must come forward with evidence that:

> (1) [S]he is a member of a protected class;
> (2) [s]he was qualified for the position [s]he
> sought to attain or retain;
> (3) [s]he suffered an adverse employment
> action; and

-24-

> (4) the action occurred under circumstances
> that could give rise to an inference of
> intentional discrimination.

Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

As before, there is no disagreement that Valerino belongs to a protected class or that she was qualified for her position as a DUSM in the District of the Virgin Islands.  As to the remainder of Valerino's prima facie case, the Government argues that several events about which Valerino complains are not adverse employment actions and that she cannot provide evidence that could give rise to an inference of unlawful discrimination.

What constitutes an "adverse employment action" in the discrimination context is not to be determined on a "one-size-fits-all basis."  Jones v. School Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1997).  Rather, "the elements of a prima facie case depend on the facts of the particular case."  Id.  Undesirable transfers and demotions have been held to be adverse employment actions, as have "loss of significant job benefits or characteristics, such as the resources necessary for an employee to do his or her job."  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 144 (3d Cir. 1999).  In contrast, our Court of Appeals has made it clear that simple letters of reprimand, without more, do not rise to the level of unlawful discrimination.  Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  Ultimately, the circumstances

-25-

must show that the action altered the "terms and conditions of employment." See Burlington, 548 U.S. at 64.

First, Valerino has taken issue with her supervisors' failure to hire guards that could have ameliorated a serious staffing shortage in the USMS offices in the District of the Virgin Islands. She makes no effort to explain why this might be considered an adverse employment action, and she admits that staffing problems affect male and female USMS employees alike. This generalized disapproval of her superiors' management decisions clearly cannot support a prima facie case of gender discrimination, and summary judgment will be granted to the Government on Valerino's discrimination claim to the extent it is founded on the failure of USMS to hire guards in the Virgin Islands.

Next Valerino points to events surrounding a piece of equipment borrowed from the Drug Enforcement Administration ("DEA") called a "Stop Stick." She had been placed as Deputy in Charge while SDUSM David Drake ("Drake") was away from the District. After attempting to return the equipment to DEA, Valerino was chastised by both Drake and Chief SDUSM Bradshaw, another senior official in the District of the Virgin Islands. Bradshaw instructed Valerino to return the equipment after several hostile conversations. Valerino claims that these acts were discriminatory in nature, but she does not explain how they make up an adverse employment action that affected the terms and conditions of her employment. Nor does she

-26-

state how an inference of intentional gender discrimination might be made beyond simply pointing out that each of the other individuals involved in the incident were male.  Here again Valerino does not meet her prima facie burden.

The plaintiff also argues that SDUSM Drake's decision in May 2006 to appoint a less-senior male DUSM named Diego Grimaldo as Deputy in Charge instead of her was a discriminatory action that deprived her of the opportunity to expand her leadership credentials.  It was very unusual for such a junior employee to be placed in charge of a senior employee in this fashion.[4]  Valerino urges that this affected the terms and conditions of her employment because it "denied [her] of her seniority benefits."

Hers is not a viable position.  Although the loss of "the resources necessary for an employee to do his or her job" is an adverse employment action, the choice of one subordinate over another to serve in a temporary supervisory capacity is not sufficiently significant to be actionable under Title VII.  See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 144 (3d Cir. 1999). Even in the more lenient retaliation context, Title VII does not protect an employee from "petty slights or minor annoyances that often take place at work and that all employees experience."

---

[4]  Grimaldo had only been on the job for a year and a half at the time, whereas Valerino had roughly two decades of service.

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).
Valerino fails to make out a prima facie case on this incident.

Even assuming that she has, Valerino does not respond to the Government's legitimate, non-discriminatory reason for DUSM Grimaldo's appointment.  DUSM Grimaldo was appointed Deputy in Charge for the time period in question because Valerino was not in the office on the day the decision was made.  Given the informal nature with which Deputy-in-Charge appointments are made, this is a legitimate reason for Drake's appointment of Grimaldo.  Summary judgment will be granted on Valerino's discrimination claim as it pertains to DUSM Grimaldo's service as Deputy in Charge in May 2006.

Valerino also claims that SDUSM Drake lodged an improper letter of reprimand against her in a bald attempt to have her employment terminated.  No other action was taken in relation to the letter.  A written reprimand, without more, is not an adverse employment action.  Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001).  This letter does not support a prima facie case of discrimination.

The Government further argues that Valerino fails to make a prima facie case with regard to a plethora of additional allegations.  For example, Valerino has complained that she was forced to take a taxi home from the airport rather than a government vehicle, she was falsely accused of inappropriately following another DUSM in her vehicle, and that she was initially asked to

-28-

supply a doctor's note for requested sick leave but was not
ultimately required to do so.  The Government contends that these
and other complaints either do not rise to the level of an adverse
employment action or did not occur in circumstances giving rise to a
reasonable inference of intentional discrimination.

Valerino supplies no argument in response.  Having
carefully considered the Government's position and the relevant
portions of the factual record, we agree that these matters cannot
support a prima facie case of gender discrimination.  We will grant
summary judgment in favor of the Government on Count I of the Third
Amended Complaint as it relates to these incidents and those other
factual matters analyzed above.

On the other hand, Valerino has raised other instances of
gender discrimination by her supervisors in the Virgin Islands that
the Government does not discuss and which survive summary judgment
when the record is taken in the light most favorable to her.  First,
in a departure from standard USMS policy and despite repeated
requests, Valerino was not qualified to use her firearm for over two
years, while males such as DUSM Grimaldo were.  Similarly, in March
2009 Valerino was not provided a mission briefing concerning
possible contraband on a prisoner and the subsequent operation to
confiscate it, while the other, male members of the team involved
were.  Firearms training and mission briefings are necessary
resources for a U.S. Marshal to do his or her job, and the denial of

-29-

them to Valerino are adverse employment actions.   Durham Life, 166
F.3d at 144.   She has further shown that similarly-situated males
were treated differently sufficient to raise a reasonable inference
of discrimination.   The Government has failed to provide any
legitimate, non-discriminatory reasons for these actions.   Summary
judgment will be denied on Count I with respect to the failure to
qualify Valerino to use her firearm and to brief her on prisoner
contraband in March 2009.

VII.

We next turn to Valerino's assertion found in Count II
that her superiors' actions in the District of the Virgin Islands
constitute unlawful retaliation caused by her many complaints of
gender discrimination.   We rely upon the same legal framework here
as we did in discussing Valerino's other retaliation claims above,
which requires a plaintiff to produce some evidence that she engaged
in protected activity, that she suffered "materially adverse" action
that "well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination," and that the protected
activity was a factual cause of the adverse action to make out a
prima facie case.   Burlington N. & Santa Fe Ry. Co. v. White, 548
U.S. 53, 68 (2006); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503
F.3d 217, 231 (3d Cir. 2007).   A pattern of retaliatory workplace
harassment can satisfy the second prong of the prima facie case.
See Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) abrogated in

part as recognized by <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006); <u>Moore</u>, 461 F.3d at 341.

The Government asserts that Valerino fails to meet this burden because the conduct she believes is retaliatory is not sufficient to deter a person from acting to protect his or her rights.[5] This is so, according to the Government, because Valerino still continued to make EEO complaints in the face of her coworkers' and supervisors' conduct, and thus she cannot credibly argue that a reasonable person would be dissuaded from making or supporting a charge of discrimination.

The Government's <u>post hoc</u> rationale cannot be correct. While the plaintiff's persistence in acting to vindicate her rights is certainly relevant here, the inquiry required is an objective one. <u>Burlington</u>, 548 U.S. at 68; <u>see also</u> <u>Boandl v. Geithner</u>, 752 F. Supp. 2d 540, 564 n.13 (E.D. Pa. 2010). If the Government's position were accepted, no plaintiff who takes action against retaliatory conduct by bringing subsequent administrative or legal proceedings would be able to make out a <u>prima facie</u> case, especially when exhaustion of administrative remedies is a prerequisite to relief in federal court. Converting the <u>Burlington</u> standard into a subjective one would act to bar § 2000e-3 retaliation claims at the courthouse door.

---

[5] We note that the activity complained of in Valerino's claim for retaliation is largely the same as that cited in support of her discrimination claim just discussed.

In this case, viewing the evidence in the light most favorable to the plaintiff, there was severe antagonism between Valerino and her superiors in the Virgin Islands, some of whom were directly involved in the circumstances that led to the plaintiff's previous jury verdict against the Government in <u>Valerino I</u>.  The evidence favorable to Valerino reveals an environment in the St. Croix office of USMS that was a "war," a "feud" in which Valerino and others in the office were at such loggerheads that USMS supervisors were recruiting her peers in an open campaign to discredit her and terminate her employment.  She was threatened with her job on at least one occasion, and Valerino's ability to do her work efficiently was placed in jeopardy.  Taken in total, these were not the "petty slights, minor annoyances, and simple lack of good manners" that do not rise to the level of deterrent conduct. <u>Burlington</u>, 548 U.S. 53 at 68.

Even if the events of which Valerino complains did not invariably affect the terms and conditions of her employment for purposes of a discrimination claim, we conclude that taken in the aggregate they would serve to deter an objectively reasonable employee from making or supporting a claim of discrimination. <u>Burlington</u>, 548 U.S. at 68.  The record further demonstrates such a pattern of antagonism as to permit an inference of causation. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280-81 (3d Cir. 2000).  As a USMS official who is a close friend of Drake explained,

-32-

Valerino's EEO complaints, that is, the actions she took which are protected from retaliation by § 2000e-3, are "why people shun her and that's why people basically don't like to work around her and as far as the hostile work environment, that's something that she's bringing on herself."  This is evidence, taken in the light most favorable to Valerino, of a causal link between the misconduct she has suffered and her protected activity.  Valerino has made out a prima facie case of retaliation by USMS in the Virgin Islands.

The Government does not come forward with any argument regarding non-discriminatory reasons for the actions taken by USMS other than to note that the conduct complained of is made up of the sort of everyday decisions that courts traditionally afford deference.  We disagree on the present state of this record.  We will deny the Government's motion for summary judgment as to Valerino's claim under Count II of the Third Amended Complaint for retaliation related to her time in the District of the Virgin Islands.

VIII.

Finally, we still have before us Count III, which is Valerino's claim for hostile work environment.  Unlike the other statutory claims analyzed above, a hostile work environment claim does not clearly fall within the McDonnell Douglas framework. Ogilvie v. N. Valley EMS, Inc., Civil Action No. 07-485, 2008 WL 4761717, at *7 n.6 (E.D. Pa. Oct. 29, 2008) (citing Abramson v.

-33-

William Paterson Coll. of N.J., 260 F.3d 265, 281 n.11 (3d Cir.
2001)).  Rather, a prima facie case of hostile work environment
sufficient to survive summary judgment exists when the plaintiff
brings forward evidence of five factors:

> (1) [T]he employees suffered intentional
> discrimination because of their sex;
> (2) the discrimination was pervasive and
> regular;
> (3) the discrimination detrimentally affected
> the plaintiff;
> (4) the discrimination would detrimentally
> affect a reasonable person of the same sex in
> that position; and
> (5) the existence of respondeat superior
> liability.

Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)
(footnote omitted).  A hostile work environment claim requires a
showing of persistent, severe unlawful conduct on the part of the
employer.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66-67
(1986).  The conduct must be so serious as to constitute a "change
in the terms and conditions of employment."  Faragher v. City of
Boca Raton, 524 U.S. 775, 788 (1998).

In this case, Valerino again bases her hostile work
environment claim on the same conduct as that of which she
complained with respect to her gender discrimination and retaliation
claims arising from her time in the Virgin Islands.  As previously
explained in more depth above, Valerino fails to bring a prima facie
case of discrimination based on her gender except with respect to a
limited set of discrete circumstances, and that analysis applies

-34-

with equal force to her hostile work environment claim.   Although
the record supports a claim of retaliation growing out of Valerino's
EEO activity and the Valerino I litigation, Valerino has not come
forward with evidence of pervasive and regular acts of gender-
motivated discrimination.   She fails to make a prima facie case, and
summary judgment will be granted in favor of the Government on this
claim.

IX.

In sum, we will grant in part and deny in part the
Government's motion for summary judgment.   Summary judgment will be
granted on Count I of the Third Amended Complaint, which is
Valerino's claim for discrimination arising from her employment in
the Virgin Islands, except as it pertains to the failure of USMS to
qualify Valerino on her firearm or provide her a mission briefing in
March 2009 regarding prisoner contraband.   We will further grant
summary judgment as to Counts III, V, VI, VII, VIII, and X in their
entirety, which are the plaintiff's hostile work environment claim,
her claims of discrimination related to the failure to promote her
to MPA 08-091 and MPA 08-182, and her claims of retaliation related
to all three of MPA 08-091, MPA 08-182, and 08-193.   The motion will
otherwise be denied.