IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| LINDA VALERINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ERIC HOLDER, in his official | : | |
| capacity as United States | : | |
| Attorney General | : | NO. 08-035 |

MEMORANDUM

Bartle, J.                                                                                  April 7, 2015

        Now before the court is the motion of Yohana Manning, Esq., former counsel for plaintiff Linda Valerino, for attorney's fees and costs. Plaintiff has also filed a cross-motion for a more limited release of fees.

        Plaintiff, a former Deputy U.S. Marshal, filed this action asserting claims of unlawful employment practice under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against defendant Eric Holder in his official capacity as United States Attorney General. Plaintiff had alleged gender discrimination, retaliation, and the creation of a hostile work environment during her employment by the U.S. Marshals Service ("USMS") in the United States Virgin Islands. After the court granted partial summary judgment in favor of the Government in an August 20, 2014 order, Valerino v. Holder, Civil Action No. 08-035, 2014 WL 4099713, (D.V.I. Aug. 20, 2014), plaintiff, proceeding pro se, reached a $350,000 settlement with the Government. The settlement was paid


into the Registry of the Court pending the determination of any award of attorney's fees and costs. The instant motions followed.[1]

In an attorney's fee dispute, the law of contract generally controls. Rainey v. Hermon, S. Ct. Civ. No. 2010-0007, 2011 WL 4738534, at *2 (V.I. Oct. 6, 2011). We look to the substantive contract law of the United States Virgin Islands. See Felder v. Casey, 487 U.S. 131, 151 (1988); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In the Virgin Islands, the court must turn first to any contractual language. Rainey, 2011 WL 4738534, at *2. The contract may be express or implied. See Hamdallah v. Warlick, 935 F. Supp. 628, 631 (D.V.I. 1996).

The terms of an otherwise-enforceable fee agreement, however, are not always due the same deference as any other contract. The court has an independent interest in vindicating the fiduciary nature of the attorney-client relationship, and so the fee agreement is subject to further judicial review for reasonableness. Rainey, 2011 WL 4738534, at *2; see also Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210, 214-15 (3d Cir. 1999). The attorney seeking fees bears the burden of proving that they are reasonable. See McKenzie Constr., Inc. v. Maynard, 758 F.2d 97, 100 (3d Cir. 1985). There are eight factors that a court must consider in determining the reasonableness of a contractual fee agreement:

---

[1] Plaintiff's other former attorney, Andrew C. Simpson, P.C., has also moved for the payment of fees and costs. We address his motion separately.

>    (1)  [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>    (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>    (3)  the fee customarily charged in the locality for similar legal services;
>    (4)  the amount involved and the results obtained;
>    (5)  the time limitations imposed by the client or by the circumstances;
>    (6)  the nature and length of the professional relationship with the client;
>    (7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>    (8)  whether the fee is fixed or contingent.

<u>Rojas v. Two/Morrow Ideas Enterprises, Inc.</u>, S. Ct. Civ. Nos. 2008-0071, 2008-0089, 2010 WL 4962913, at *6-7 (V.I. July 30, 2010).

In this case, Manning has moved for the payment of $143,883 in attorney's fees and $2,272.62 for the costs of mediation.  In her cross-motion, plaintiff argues that a payment of not greater than $65,000 is warranted.

The action was originally filed on plaintiff's behalf by her former attorney, Andrew C. Simpson.  Plaintiff terminated Simpson's representation in April 2010.  Manning then served as plaintiff's counsel from March 9, 2011 to December 14, 2011 at which time he was also terminated.  Apparently changing her mind, plaintiff engaged him again on February 24, 2014 but discharged him on December 14, 2014.

At no point were the terms of either representation reduced to writing. Rather, plaintiff and Manning simply orally agreed to an hourly fee structure. It is undisputed that Manning was to be paid $100 per hour for his representation of her in 2011 and $225 per hour for his representation in 2014.[2]

Manning has submitted a bill listing 197.4 hours worked in 2011 and 551.3 hours worked in 2014. Plaintiff strongly contests these numbers. She has proffered numerous examples of entries that bill for non-legal, duplicative, or inefficient work. She notes that he frequently needed her help in administrative tasks and that she had to perform many other functions outright because Manning was so unreliable. Manning counters that he spent so much time on plaintiff's case because she micromanaged him excessively and because of the case's complexity. He claims to have omitted nearly 900 telephone and email conversations with plaintiff from his bill.

We turn to the factors set forth by the Supreme Court of the Virgin Islands for determining the reasonableness of Manning's fee. First we consider the "time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Rojas v. Two/Morrow Ideas

---

[2] During the course of settlement negotiations with the Government, Manning had made a further offer to accept a lump-sum fee of $65,000 should the case settle for $350,000. The deadline for plaintiff to accept this offer was December 5, 2014, but that date passed without plaintiff accepting Manning's proposal. Plaintiff now agrees to pay him $65,000 at the most based on this offer.

Enterprises, Inc., S. Ct. Civ. Nos. 2008-0071, 2008-0089, 2010 WL 4962913, at *6 (V.I. July 30, 2010).  Manning has explained that the case consisted of myriad acts of alleged unlawful conduct by plaintiff's coworkers and nearly 7,000 pages of documents.  Manning was only given a week to prepare for depositions at the outset of the 2014 representation, and plaintiff was consistently unwilling to take steps to simplify or streamline the case.  While it did not involve novel legal issues, we agree that this case was quite factually complex.  This factor cuts in favor of Manning receiving the full benefit of his fee.

Next, the court must assess the "likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer."  Id.  Neither party has presented any argument with respect to this factor.  Manning has put forward, however, the large number of hours that he spent working on this case in 2011 and 2014.  The expenditure of these hours would reasonably have been apparent to plaintiff, since she has had experience with these sorts of lawsuits in the past.  It is therefore appropriate to compensate Manning for his opportunity cost in taking on this representation.

The third factor asks what the customary fee is in the locality for similar legal services.  Id.  Because it is so closely intertwined with the question of "the experience, reputation, and ability of the lawyer or lawyers performing the services," we

consider these factors together.  Id. at 7.  Plaintiff argues that the $100 per hour and $225 per hour rates to which she agreed are not reasonable for an attorney of Manning's skill and experience. Manning, according to plaintiff, was disorganized, frequently asked her to do her own legal research, pushed upon her administrative tasks like preparing binders or making copies, undermined settlement in the hopes of obtaining trial experience, and even left to her the task of filing documents with the court.  He was frequently unavailable and fell victim to recurring technological difficulties which affected the quality of his representation.

In support of her position, plaintiff notes that Manning's principal experience is as a court-appointed criminal attorney.  The hourly rate for a court-appointed attorney in St. Croix was $90 per hour in 2011 and $126 per hour in 2014.  Plaintiff urges that the quality of legal services she received justifies the use of these reduced rates.

Manning contests plaintiff's assessment of his skill and experience.  He maintains that he has litigated over 250 civil cases, including Title VII actions.  Manning has been listed as an attorney in 20 civil cases before this court.  He has also been mentioned in local newspapers as counsel in two administrative matters and one civil case, of which we may take judicial notice. Fed. R. Evid. 201(b)(2).

Having carefully reviewed the record and Manning's filings with the court in this case, we will not reduce Manning's hourly rates. First, plaintiff, a sophisticated litigant, agreed to the rates Manning charged. In addition, Manning does have experience not only as a criminal defense lawyer but also as a lawyer representing clients in civil matters.

Nonetheless, we have identified several hours billed for which Manning is not entitled to compensation. For example, in April 2011 Manning listed over 6 hours simply for the "review [of] docket entries." He also billed several hours in that month and in May 2014 for the repeated review of depositions without any description of the purpose of such redundant work. In all we have discovered 18.35 hours billed in 2011 and 50.2 hours billed in 2014 for excessive, duplicative, or unduly vague tasks which will be reduced in calculating Manning's fee.

The next factor is "the amount involved and the results obtained." Id. at *6. As noted above, Manning has requested $143,883 in attorney's fees, and plaintiff eventually received $350,000, a settlement amount agreed upon while plaintiff was proceeding pro se. Manning contends that the settlement was a direct result of the court's partial denial of summary judgment which occurred during the course of his representation. Manning asserts that the Government's offer increased by over $200,000 after the court's decision on summary judgment. We note, however, that

-7-

settlement in this case followed a series of intensive negotiations facilitated in part by the court. In these discussions, which occurred after Manning had been terminated, no attorney appeared on plaintiff's behalf.

Moreover, plaintiff has emphasized that she spent a great deal of time and effort in responding to the Government's motion for summary judgment. She fronted the expenses necessary to prepare documents for the factual record in support of her opposition and performed all of the work in culling relevant facts from those documents. She even filed the supporting exhibits with the court. Moreover, plaintiff's opposition to summary judgment was based in large part on a record developed by plaintiff or her first attorney, Andrew Simpson. We note that nearly all of the depositions upon which plaintiff relied in the late stages of the case occurred under his aegis. Manning's claim to the results obtained through the partial denial of summary judgment must be shared with Simpson.

In addition, we have reviewed the 152.4 hours Manning states that he worked on the brief in opposition to the Government's motion for summary judgment. They are excessive. We will reduce them by half, that is, to 76.2 hours.

The next factor a court must consider in determining whether a fee arrangement is reasonable is the "time limitations imposed by the client or by the circumstances." Id. at 7. Plaintiff made it clear at the beginning of the representation that

-8-

she would not compensate Manning for time spent corresponding with her. Manning does not contest this assertion. He nonetheless listed 14.5 hours of correspondence or other conversation with plaintiff in 2011 and 75.3 hours in 2014 on his timesheets. These hours will be deleted from his bill, leaving a total of 164.55 hours for 2011 and 271.9 hours for 2014.

  A court must also assess "the nature and length of the professional relationship with the client." Id. The attorney-client relationship in this case was remarkably contentious. As discussed above, plaintiff gave a low assessment of Manning's professionalism and legal skill. According to plaintiff, Manning was frequently unavailable, needed substantial assistance from her in completing tasks, and appeared to put his own interests before hers on the issue of settlement. Manning, for his part, describes plaintiff as "litigious, contentious and disagreeable." He chafes at what he feels was micromanagement and details his frustrations in trying to persuade plaintiff that the actions she demanded would be meritless or contrary to the Federal Rules of Civil Procedure or Evidence. This factor does not weigh either in favor of or against the reasonableness of the requested attorney's fee.

  The last factor is whether the fee was fixed or contingent. Id. Manning has argued repeatedly that the "contingent nature of payment" justifies his fee, but he also denies having agreed to condition his compensation on the results obtained in the

litigation.  The record shows that Manning was to be compensated at an hourly rate regardless of result.  While plaintiff bore the risk of losing her claim, there is no basis to adjust further Manning's fees based on the structure to which he and plaintiff agreed.

In sum, we will calculate Manning's fee using an hourly rate of $100 per hour for the 2011 representation and $225 per hour for the 2014 representation.  A total of 18.35 hours will be reduced from Manning's 2011 timesheet for excessive, duplicative, or vaguely described tasks, and 50.2 hours will be subtracted from his 2014 timesheet for the same reasons.  The time Manning has listed for communicating with plaintiff, which amounts to 14.5 hours in 2011 and 75.3 hours in 2014, will also be deducted.  Finally, we will compensate him for only half of the 152.4 hours he claimed in 2014 for work in opposition to the Government's motion for summary judgment.  As a result, Manning is entitled to an attorney's fee of $94,777.50.

We still have before us the issue of the $2,272.62 that Manning has claimed for mediation costs.  Manning has provided no specifics or support for this request.  Accordingly, his motion for payment of mediation costs will be denied.

In light of this conclusion and our decision that Manning is entitled to an attorney's fee of $94,777.50, plaintiff's cross-motion for a limited release of attorney's fees not greater than $65,000 will be denied.