```
         IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. CROIX


LINDA VALERINO                   :        CIVIL ACTION
                                 :
         v.                      :
                                 :
ERIC HOLDER, in his official     :
capacity as United States        :
Attorney General                 :        NO. 08-035
```

MEMORANDUM

Bartle, J.                                          April 9, 2015

        Now before the court is the motion of Andrew C. Simpson, P.C., former counsel for plaintiff Linda Valerino, for attorney's fees.

        Plaintiff, a former Deputy U.S. Marshal, filed this action asserting claims of unlawful employment practice under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against defendant Eric Holder in his official capacity as United States Attorney General. Plaintiff had alleged gender discrimination, retaliation, and the creation of a hostile work environment during her employment by the U.S. Marshals Service ("USMS") in the United States Virgin Islands. After the court granted partial summary judgment in favor of the Government in an August 20, 2014 order, Valerino v. Holder, Civil Action No. 08-035, 2014 WL 4099713, (D.V.I. Aug. 20, 2014), plaintiff proceeding pro se reached settlement with the Government. The $350,000 settlement was paid

into the Registry of the Court pending the determination of any award of attorney's fees and costs. The instant motion followed.[1]

In an attorney's fee dispute, the law of contract generally controls. Rainey v. Hermon, S. Ct. Civ. No. 2010-0007, 2011 WL 4738534, at *2 (V.I. Oct. 6, 2011). We look to the substantive contract law of the United States Virgin Islands. See Felder v. Casey, 487 U.S. 131, 151 (1988); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In the Virgin Islands, the court must turn first to any contractual language. Rainey, 2011 WL 4738534, at *2. The contract may be express or implied. See Hamdallah v. Warlick, 935 F. Supp. 628, 631 (D.V.I. 1996).

The terms of an otherwise-enforceable fee agreement, however, are not always due the same deference as any other contract. The court has an independent interest in vindicating the fiduciary nature of the attorney-client relationship, and so the fee agreement is subject to further judicial review for reasonableness. Rainey, 2011 WL 4738534, at *2; see also Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210, 214-15 (3d Cir. 1999). The attorney seeking fees bears the burden of proving that they are reasonable. See McKenzie Constr., Inc. v. Maynard, 758 F.2d 97, 100 (3d Cir. 1985). There are eight factors that a court must consider in determining the reasonableness of a contractual fee agreement:

---

[1] Plaintiff's other attorney, Yohana Manning, has also moved for the payment of fees and costs. We address his motion separately.

-2-

>     (1)  [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>     (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>     (3)  the fee customarily charged in the locality for similar legal services;
>     (4)  the amount involved and the results obtained;
>     (5)  the time limitations imposed by the client or by the circumstances;
>     (6)  the nature and length of the professional relationship with the client;
>     (7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>     (8)  whether the fee is fixed or contingent.

Rojas v. Two/Morrow Ideas Enterprises, Inc., S. Ct. Civ. Nos. 2008-0071, 2008-0089, 2010 WL 4962913, at *6-7 (V.I. July 30, 2010). Moreover, in the context of contingent fees, courts have considered "the results obtained, the quality of the work, and whether the attorney's efforts substantially contributed to the result." McKenzie, 758 F.2d at 101.

The court will disturb a contingent fee agreement only in "unusual circumstances" in which fundamental fairness and equity demand it. Id. at 101, 102; see also Bowes v. Suzuki Motor Co., 217 F. Supp. 2d 610, 616 (D.V.I. 2002). Our Court of Appeals has admonished that we "should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent

parties." Ryan, 193 F.3d at 215 (quoting McKenzie, 758 F.2d at 101).

In this case, Simpson has requested $75,000 in attorney's fees. He represented plaintiff from January 2008 until April 27, 2010. He filed the original complaint in this matter on May 5, 2008.

Simpson negotiated a written fee agreement with plaintiff which was signed by both parties on September 8, 2009. The negotiations took place at a time when Simpson had already accumulated approximately $41,000 in fees and costs. The relevant portion of the agreement provides for a hybrid flat fee/contingent fee:

> Client [plaintiff] has paid a non-refundable flat fee of $50,000....
> ....
> Upon conclusion of the litigation, whether by settlement, final judgment (after appeal if necessary), or otherwise, any further fee to be paid to law firm will be calculated according to the following:
> ....
> If there is a judgment or settlement that includes a cash award for damages given in favor of client, but no promotion is granted to client, the following fees shall be paid to law firm:
> > One fourth of the difference between the cash award and $50,000 [*e.g.*, (cash award - $50,000/4 = fee] *and*
> > Any attorney fee award entered in the case, minus $50,000 and minus a sum equal to the costs paid by client (which shall be

> paid to client to reimburse her
> for the initial flat fee and the
> costs she paid in the case).

(Footnote omitted).  The agreement further provides that Simpson would be entitled to the final contingent fee even if he was no longer counsel of record at the time of any settlement or judgment:

> Law firm shall be entitled to the full
> contingent share of any settlement of or
> judgment on the claim for prosecution for which
> it is hereby retained, even though client
> discharges it or obtains a substitution of
> counsel before such settlement is made or
> judgment is had.

Consistent with the agreement's terms, Simpson's $75,000 request is one-quarter of $300,000, the difference between plaintiff's $350,000 settlement amount and $50,000.

There are no unusual circumstances in the consummation of the fee agreement to justify a departure from its terms.  Simpson has submitted evidence of the in-depth fee negotiations that he conducted with plaintiff.  She expressly understood the contract to be a "business agreement."  She had specific comments on the paragraph requiring fees to be paid to Simpson even if his firm was discharged, but she did not object to the provision's inclusion.  The agreement was fully and fairly negotiated.  There is nothing in the events leading up to the fee agreement's formation that offend equity or fairness.  McKenzie Constr., Inc. v. Maynard, 758 F.2d 97, 101, 102 (3d Cir. 1985).

-5-

Nor is there any basis to reduce the fee award to be found in the factors set forth by the Virgin Islands Supreme Court. As noted above, the first factor is "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Rojas v. Two/Morrow Ideas Enterprises, Inc., S. Ct. Civ. Nos. 2008-0071, 2008-0089, 2010 WL 4962913, at *6 (V.I. July 30, 2010). While this case did not break new legal ground, we agree with Simpson that it was a factually complex matter requiring substantial time and effort. This factor militates in favor of full payment.

The second factor asks whether "acceptance of the particular employment will preclude other employment by the lawyer" and whether the client is aware of that fact. Id. In addressing this factor, Simpson argues that Valerino must have been aware that this case would preclude other employment because she had previously had a similar case against the Government on which her attorneys and paralegals spent nearly 800 hours combined. We agree that Simpson should be compensated for the opportunity cost of taking on the representation.

Third, we must consider the "fee customarily charged in the locality for similar legal services." Id. According to Simpson's uncontradicted affidavit, contingent fees in the Virgin Islands usually range from 33% to 40%, while some more complex cases command a fee as high as 50%. When added to his $50,000 flat fee

already paid, Simpson's $75,000 contingent fee is 35.7% of plaintiff's $350,000 recovery, comfortably within the prevailing range of contingent fee awards in the locality. This factor cuts in favor of the reasonableness of Simpson's fee.

Next we compare the "amount involved and the results obtained." Id. In our view, plaintiff has received the benefit of the bargain she made with Simpson. Indeed, his conduct and representation appear to have been exemplary. Simpson took numerous depositions early in the life of the case, which included successful efforts to elicit favorable testimony from plaintiff's workplace supervisors. Plaintiff expressed great satisfaction with the results of these depositions. The supervisors' testimony and other discovery assembled by Simpson would go on to be important in the court's partial denial of summary judgment in December 2014. The settlement amount in this case was a direct result of the court's denial of summary judgment, which came about in no small part because of the record created by Simpson. The amount involved bears a reasonable relationship to the results obtained.

No party has supplied any argument or information regarding any "time limitations imposed by the client or by the circumstances." Id. at 7. Presumably there were none. We therefore turn to "the nature and length of the professional relationship with the client." Id. The professional relationship between plaintiff and Simpson appears to have been very good for

-7-

most of the representation. The relationship only soured after plaintiff lost her trust in Simpson due to his representation of a different USMS client in an unrelated matter.[2] It is a client's absolute prerogative to end a lawyer's representation. When the lawyer was not terminated for neglect or any misdeed, however, he or she should not be penalized, without more, for the premature conclusion of the attorney-client relationship.

We must also take into account the "experience, reputation, and ability of the lawyer ... performing the services." Id. Simpson is an experienced attorney, and we have no reason to doubt his legal acumen or the competence of his staff. Moreover, during the negotiation of the fee agreement, plaintiff emphasized that she sought Simpson's expertise specifically, which she believed was "the best." Simpson's experience and reputation fall in favor of his receiving a full fee.

The last factor asks whether the fee was fixed or contingent. Id. Here the fee was a combined flat fee and contingent fee. The fixed portion of the fee largely accounted for work Simpson had already performed on behalf of plaintiff. Moreover, he bore the risk as to the quantum of any follow-on contingent fee. The fee structure was reasonable.

---

[2] While plaintiff pursued an 11-count ethics complaint against Simpson, it was dismissed for lack of probable cause.

In sum, we conclude that Simpson's fee is reasonable. Simpson's motion for the payment of $75,000 from the $350,000 in settlement money previously paid into the Registry of the Court will be granted.